IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

LEE STUART GUEST, Individually  \*
and on Behalf of All Persons    \*
Similarly Situated,             \*
                                \*
        Plaintiffs,              \*    CV 202-142
                                \*
    VS.                          \*
                                \*
CHARLES "CHUNK" JONES, et al.,   \*
                                \*
        Defendants.              \*

# O R D E R

Plaintiff Lee Stuart Guest filed this lawsuit on August 28, 2002, pursuant to 42 U.S.C. § 1983, alleging various federal and state constitutional violations occurring at the McIntosh County Jail (the "Old Jail") in Darien, Georgia. The case was brought by Plaintiff for himself and on behalf a purported class of "all persons who are, have been, and will be confined in McIntosh County Jail under conditions which violate rights guaranteed them by the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." (Pl.'s Mot. to Certify the Class, ¶ 2.) Plaintiff and the purported class were represented by Mr. Douglas W. Alexander of St. Simon's Island, Georgia, throughout the litigation involving the Old Jail.

DHB (34)                                                      ccc:

Following an evidentiary hearing and an inspection of the McIntosh County Jail on September 4, 2002, this Court issued an Order enjoining the Sheriff of McIntosh County from holding, jailing or detaining any person as an inmate in the Old Jail. (Order of Sept. 19, 2002.) Subsequently, this Court entered an Order staying the proceedings and closing the case for all statistical purposes. (Order of Aug. 27, 2003.) The purported class was never certified.

Following the issuance of the injunction, Sheriff Charles "Chunk" Jones, a defendant in this action, began housing the inmates of McIntosh County in other county jails at the expense of McIntosh County, even though the County had completed a "New Jail" in February of 2002. Sheriff Jones contended that he needed 16 additional jailers before he could move inmates into the New Jail. In January 2003, the County Commission finally voted to approve funding for the additional jailers, and the New Jail was opened thereafter.

In February of 2003, Plaintiff's attorney, Mr. Alexander, became the new County Attorney for McIntosh County. Mr. Alexander's representation of the County was presumably not known to a former client housed in the New Jail because he and his mother began to implore Mr. Alexander with letters and phone calls to look into the jail conditions at the New Jail. In spite of his position as County Attorney, Mr. Alexander agreed to meet with this former client at the McIntosh County

Jail some time in the summer of 2005, whereupon Mr. Alexander informed the former client of his conflict and referred him to Mr. J. Alexander Atwood, Jr., of Brunswick, Georgia. It is unclear exactly when Mr. Alexander and Mr. Atwood spoke about the matter, but it is clear that Mr. Atwood agreed to look into the jail conditions at the New Jail after consultation with Mr. Alexander, presumably in the summer of 2005.

In July 2005, Chief Deputy Sheriff Franklyn Hunter appeared before the County Commission to request $13,000 to repair and/or replace light fixtures in cell pods that had been destroyed by inmates. The Commission approved the expenditure but then directed its new County Attorney, Mr. Alexander, to make arrangements to inspect the New Jail and to determine the extent of necessary repairs. On August 23, 2005, Mr. Alexander, Mr. Atwood, Commissioner David Stevens, two architects, and an electrical engineer inspected the New Jail.

On August 31, 2005, Mr. Atwood filed a motion to re-open the instant case, setting forth allegations of unconstitutional jail conditions at the New Jail. Mr. Atwood also filed a notice of appearance as substitute counsel for Plaintiff Lee Stuart Guest and the purported class, although he admitted at a status conference on October 31, 2005, that he has never met Lee Stuart Guest and does not know where he

is.[1] At this same time, indeed only one minute earlier, a notice of appearance as substitute counsel was filed for Mr. Alexander, in which Mr. Alexander states that he represents all Defendants in the action, including Sheriff Jones.[2] Mr. Alexander did not file a motion to withdraw from his representation of Plaintiff as required by Local Rule 83.7.

On September 9, 2005, Sheriff Jones, through his own attorney Mr. Robert Bartley Turner, filed a motion to disqualify Mr. Alexander from the case.[3] Sheriff Jones contends that Mr. Alexander cannot possibly act as counsel for the County Defendants having previously acted as counsel for Plaintiff in the same case.

Only a few days later, on September 12, 2005, Mr. Alexander filed a response to Plaintiff's motion to re-open the case, in which he states that "[t]he factual allegations set forth in Plaintiffs' motion [to re-open] concerning the

---

[1] Mr. Guest was a federal inmate housed at the old McIntosh County Jail at the time this action was originally filed, but he is no longer an inmate of McIntosh County.

[2] The Court assumed during the status conference that Mr. Atwood and Mr. Alexander appeared in the Office of the Clerk in Brunswick at the same time to file their respective notices. It was not until the conclusion of the status conference that Mr. Atwood clarified that he filed Mr. Alexander's notice for him because Mr. Alexander was going out of town.

[3] Apparently, Sheriff Jones asked the County Commission to appoint him an attorney and suggested Mr. Turner, who had represented Sheriff Jones in some unrelated matters. The Commission acquiesced.

4

current condition of the jail are essentially accurate." Mr. Alexander presumed to file this response on behalf of all Defendants, including Sheriff Jones. Mr. Alexander had not spoken to Sheriff Jones about the issues prior to filing this response.[4]

Mr. Alexander's response drew an immediate reaction from Sheriff Jones, who filed a motion to strike the response. Mr. Alexander, however, does not see anything wrong with "switching sides" in the case because (1) he received a solicited opinion that the switch was permissible from the State Bar of Georgia through its telephonic "Ethics Helpline," and (2) the operative facts of the case have changed in that the issues before the Court now deal with the New Jail as opposed to the Old Jail. Also, in an effort to remedy the situation, Mr. Alexander filed an amended notice of appearance in which he states that he represents the "McIntosh County Commissioners and McIntosh County, Georgia," not Sheriff Jones. He also filed an amended response to the motion to re-open in which he disavows any representation of Sheriff Jones.

This Court conducted a status conference in the case on October 31, 2005, at which time I entered my findings with

---

[4] It may be argued that Mr. Alexander was not aware of Sheriff Jones' opposition to Mr. Alexander's continued participation in this case when he filed the response. However, Mr. Turner represented at the status conference that he had spoken to Mr. Alexander about this issue before Mr. Alexander filed the response.

respect to Sheriff Jones' motion to disqualify Mr. Alexander from the case and concluded that he must be disqualified.[5] Mr. Alexander has filed a motion for reconsideration, which I have carefully read and considered in crafting this Order. As I will discuss below, I fully recognize the very serious nature of the substantive allegations in this case; nevertheless, the rule of ethics and the rules of civil procedure cannot be ignored as if they are matters of little consequence.

At the outset, Plaintiff's motion to re-open the instant case (doc. no. 69) is **GRANTED** but only for the limited purpose of determining the appropriate representation of the parties and ascertaining whether this case should continue in its current style with respect to the substantive allegations.

There are two Georgia Rules of Professional Conduct that directly address the situation in this case.[6] First, Rule

---

[5] In his motion for reconsideration, Mr. Alexander expresses his surprise that the disqualification issue was addressed at the hearing, stating that he only expected an informal conference about the jail conditions. However, the motion to disqualify had been fully briefed and had been filed over a month prior to the hearing. Moreover, the Court has the power *and responsibility* to regulate the conduct of attorneys who practice before it. United States v. Kitchin, 592 F.2d 900, 903 (5th Cir. 1979). Thus, if I discern a matter that affects both the reality and appearance of justice, it is my duty to handle that matter first.

[6] Attorneys of this district are governed by the Georgia Bar Rules of Professional Conduct. Loc. R. 83.5(d).

1.11(c)(1) provides:

> Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment . . . .

Ga. R. & Regs. St. Bar 4-102(d), 1.11(c)(1).

Rule 1.7(a) provides:

> A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client . . . .

Id., Rule 1.7(a). While there are situations in which a client may consent to have a lawyer continue representation under a conflict of interest, such consent may not be given if the situation involves claims in the same or substantially related proceeding. Id., Rule 1.7(c)(2).

In the instant case, Mr. Alexander suggests that there is no conflict of interest in this case because it now involves a different jail with a different set of conditions than that which was at issue when he represented Plaintiff. This argument is disingenuous at best. This is how I see it. Mr. Alexander, while a private attorney, pursued claims against the McIntosh County Jail for constitutional violations on behalf of his former client, Lee Stuart Guest, and all other inmates. Now, Mr. Alexander, as a public attorney, wishes to defend the same county against the substantially similar

constitutional claims of his former client and other inmates. Plaintiff and the County Defendants are on diametrically opposed sides of the dispute - is the jail experiencing constitutional infirmities? While Mr. Alexander does not see a conflict in jumping from one side to the other, all I see are countervailing interests of his former client and his current one. The present circumstances calls for Mr. Alexander to vigorously represent his present client in a manner that may prove adverse to the interests of his former client. It is of little moment to this Court that Mr. Alexander, in his current capacity as County Attorney, feels that it is the County's duty to remedy constitutional infirmities so that it is not subjected to financial liability. If anything, Mr. Alexander's supposition that the County is obligated to do something about a situation presented by a former client makes the appearance of impropriety on Mr. Alexander's behalf even more stark. As once stated by another district judge of this circuit, "simultaneous (or successive) representation of clients with adverse interests is the most egregious form of a lawyer's conflict of interest." See United States v. Culp, 934 F. Supp. 394, 397 (M.D. Fla. 1996) (Gagliardi, J.). Put simply,

there is an intractable conflict of interest in this case.[7]

Further, Mr. Alexander's representation that he received an "unofficial opinion" from the State Bar of Georgia is unavailing. The Court notes that there is no record of the conversation such that there is any way to know the exact contents or context of the conversation. Nor can we know how the question was phrased and presented to the State Bar.

In responding to the charge of conflict of interest, Mr. Alexander points out that the County's former attorney, Mr. James Coppage, had represented Sheriff Jones prior to becoming County Attorney. Indeed, this Court permitted Mr. Coppage to withdraw, upon his motion, as counsel for Sheriff Jones and to enter an appearance for McIntosh County and the Commissioners. (Order of Apr. 23, 2004.) Mr. Alexander complains that there was no concern expressed over Mr. Coppage's dual representation. The problem with Mr. Alexander's charge is that Sheriff Jones and the County Defendants were not on opposite sides of the case. Mr. Alexander admits as much when he acknowledges that both the Sheriff and the County Commission have the same lawful duty to operate the county

---

[7] The County Commission's resolution to allow Mr. Alexander to continue in his representation does not matter to this Court. See United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994) (stating that a court is not required to accept a waiver of a conflict of interest). Further, Rule 1.7(c)(2) indicates that such a waiver is impermissible.

9

jail in accordance with the law, indicating that their interests are aligned.[8] While the record evidences certain animosity between the Commission and the Sheriff, some of which is borne out of a hotly contested recent election, the fact remains that when it comes to addressing allegations of constitutional infirmities at the jail, the parties are on the same side of the "vs."[9]

Upon the foregoing, the motion to disqualify Mr. Alexander from this case (doc. no. 72) is **GRANTED**. Mr. Alexander may not act as counsel to any party in this case or any other case involving the conditions at the McIntosh County Jail. Given the fact that Mr. Alexander had filed an amended response to the motion to re-open, Sheriff Jones' motion to strike the first response (doc. no. 74) is **DENIED AS MOOT**. His motion for a hearing (doc. no. 75) is also **DENIED AS MOOT**. Finally, Mr. Alexander's motion for reconsideration (doc. no. 82) is hereby **DENIED**.

---

[8] Mr. Alexander states: "Both the Sheriff and the Commission have a legal duty to house prisoners in humane conditions. Both have the same interest, and there is no conflict of interest in carrying out these responsibilities." (Mot. for Recons., at 4.)

[9] While Mr. Alexander insinuates in his papers that Mr. Turner and/or Mr. Coppage have been paid attorney's fees by the Commission that are not authorized by law, the issue has not been properly placed before the Court. Moreover, I am not at all certain that this Court would have jurisdiction over such a dispute.

This ruling in no way reflects a belief that Mr. Atwood and Mr. Alexander "plotted" or committed "sinister" or "underhanded" acts in bringing about the motion to re-open. The ruling simply recognizes that which should have been apparent all along - that a conflict of interest exists in this case.[10] Moreover, the Court has no reason to doubt the ability of Mr. Atwood to adequately prosecute a matter of social and constitutional significance such as this.

This brings me to the next procedural issue in the case at present. Should this case continue under its current style, especially where the named plaintiff has not been located and is not housed at the New Jail? Federal Rule of Civil Procedure 23 presupposes that there is a class representative in the case and that the class representative will fairly and adequately protect the interests of the class. It is difficult for this Court to discern how these prerequisites for class certification may be met without a named representative plaintiff. Moreover, it is unnecessary to trot old this tired and ragged orphaned case to serve as the vehicle for what could be important constitutional issues. The issues would be better served to be presented more directly and efficiently in a new case rather than being

---

[10] Even had this Court provided specific notice of its inquiry into the matter prior to the October 31st status conference, the result would remain unchanged.

weighed down with all of the baggage of the instant case. Accordingly, **IT IS ORDERED** that Plaintiff show this Court within fifteen (15) days of entry of this Order why this case should not be dismissed for lack of a class representative and for Plaintiff Guest's apparent lack of standing.

Finally, the seriousness of the allegations presented in the motion to re-open this case has not gone unnoticed. To be abundantly cautious, I requested an inspection of the McIntosh County Jail by the United States Marshals Service, partly because of the presence of federal prisoners in the Jail, but also out of my general concern for the conditions of confinement at large. United States Marshal James T. Roberts, Jr. caused an inspection of the Jail to be conducted by qualified personnel on November 2, 2005. No major discrepancies were discovered. Accordingly, I see no need for an emergency approach to the instant allegations made, not by prisoners, but by lawyers and jail personnel.

**ORDER ENTERED** at Augusta, Georgia this 23rd day of November, 2005.

UNITED STATES DISTRICT JUDGE